Filed 12/18/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHARON McGILL, | |
| Plaintiff and Respondent, | G049838 |
| v. | (Super. Ct. No. RIC1109398) |
| CITIBANK, N.A., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Riverside County, John W. Vineyard, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Reversed and remanded.

Stroock & Stroock & Lavan, Julia B. Strickland and Marcos D. Sasso for Defendant and Appellant.

Capstone Law, Raul Perez, Melissa Grant, Glenn A. Danas and Katherine W. Kehr for Plaintiff and Respondent.

\* \* \*

Plaintiff and respondent Sharon McGill sued defendant and appellant Citibank, N.A. (Citibank) for unfair competition and false advertising in offering a credit insurance plan she purchased to protect her Citibank credit card account. Alleging claims under California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.; hereinafter UCL), false advertising law (Bus. & Prof. Code, § 17500 et seq.; hereinafter FAL), and Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.; hereinafter CLRA), McGill seeks monetary damages, restitution, and injunctive relief to prevent Citibank from engaging in its allegedly unlawful and deceptive business practices.

Citibank petitioned to compel McGill to arbitrate her claims based on an arbitration provision in her account agreement. The trial court granted the petition on McGill's claims for monetary damages and restitution, but denied the petition on the injunctive relief claims. In doing so, the court relied on the "*Broughton-Cruz* rule" the California Supreme Court established in *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 (*Broughton*), and *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 (*Cruz*). Under that state-law rule, arbitration provisions are unenforceable as against public policy if they require arbitration of UCL, FAL, or CLRA injunctive relief claims brought for the public's benefit. Citibank appeals the trial court's order on the injunctive relief claims; McGill does not challenge the order on the claims for monetary damages and restitution.

We reverse and remand for the trial court to order all of McGill's claims to arbitration. As explained below, we join several federal court decisions in concluding the Federal Arbitration Act (9 U.S.C. § 1 et seq.; hereinafter FAA) preempts the *Broughton-Cruz* rule. In *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740] (*AT&T Mobility*), the United States Supreme Court unmistakably declared the FAA preempts all state-law rules that prohibit arbitration of a particular type of claim because an outright ban, no matter how laudable the purpose, interferes with the FAA's objective of enforcing arbitration agreements according to their terms. The

2

*Broughton-Cruz* rule falls prey to *AT&T Mobility*'s sweeping directive because it is a state-law rule that prohibits arbitration of UCL, FAL, and CLRA injunctive relief claims brought for the public's benefit.

We must reject McGill's contention the California Supreme Court's recent decision in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), "reaffirmed" the *Broughton-Cruz* rule. To the contrary, *Iskanian* confirmed the expansive scope of the FAA's preemption and overturned another state-law rule invalidating class action waivers on claims for arbitration of unpaid wages. *Iskanian* also established a new rule invalidating predispute waivers of an employee's right to bring a representative action under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; hereinafter PAGA) to recover civil penalties for an employer's Labor Code violations. The *Iskanian* court concluded the FAA did not preempt this new rule because a PAGA representative claim belongs to the state, and an aggrieved employee simply brings the claim as an agent or proxy of the state. Accordingly, a PAGA representative claim is not subject to a private arbitration agreement between an employer and an employee or the FAA. As explained below, a PAGA representative claim is not comparable to an injunctive relief claim under the UCL, FAL, or CLRA, and therefore *Iskanian*'s narrow exclusion does not save the *Broughton-Cruz* rule from preemption.

I

FACTS AND PROCEDURAL HISTORY

Citibank is a national banking association that offers consumers a variety of financial services, including credit card accounts and credit insurance plans. Under its "Credit Protector" plan, Citibank defers or credits certain amounts on a consumer's Citibank credit card account when one or more qualifying events occur, such as long-term disability, unemployment, divorce, military service, and hospitalization.

3

Citibank charges consumers who purchase the Credit Protector plan a monthly premium based on the consumer's credit card balance.

McGill opened a Citibank credit card account and purchased the Credit Protector plan. The operative "Citibank Card Agreement" (Agreement) when McGill opened her account did not include an arbitration provision. Citibank, however, later sent McGill a "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement" (Change in Terms Notice) that amended the Agreement to add an arbitration provision. The provision stated, "Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called 'Claims')."

The provision further provided, "All Claims relating to your account or a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; . . . and Claims made independently or with other claims. . . . Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis. [¶] . . . [¶] . . . This arbitration provision is governed by the Federal Arbitration Act (the 'FAA'). [¶] . . . [¶] . . . Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other

4

representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court."

Under the Change in Terms Notice, McGill could have refused to accept the arbitration provision by sending Citibank written notice within 26 days of the closing date for her next account statement. If McGill opted out, she could have continued to use her credit card under the existing terms "until the end of [her] current membership year or the expiration date on [her] card(s), whichever is later." McGill did not opt out of the arbitration provision.

In 2011, McGill filed this class action based on Citibank's marketing of the Credit Protector plan and the manner in which Citibank administered McGill's claim under the plan when she lost her job in 2008. The operative complaint alleges claims against Citibank for (1) violation of the UCL; (2) violation of the FAL; (3) violation of the CLRA; and (4) improper sale of insurance (Ins. Code, § 1758.9). The relief McGill seeks includes restitution, monetary and punitive damages, attorney fees and costs, and injunctive relief enjoining Citibank from continuing to engage in its allegedly illegal and deceptive practices.

Citibank filed a petition to compel McGill to arbitrate her claims on an individual basis as required by the Agreement's arbitration provision. The trial court granted the petition in part and denied it in part. Specifically, the court severed and stayed the claims for injunctive relief under the UCL, FAL, and CLRA, and ordered McGill to arbitrate all her other claims, including claims for restitution and damages under the UCL, FAL, CLRA, and Insurance Code. Despite finding the Agreement's arbitration provision applied to all of McGill's claims, the trial court refused to order arbitration of the injunctive relief claims based on the California Supreme Court's *Broughton-Cruz* rule. Citibank timely appealed the trial court's decision refusing to require McGill to arbitrate her injunctive relief claims.

II

DISCUSSION

A.    *Standard of Review*

"""There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]" [Citation.]' [Citation.]" (*Network Capital Funding Corp. v. Papke* (2014) 230 Cal.App.4th 503, 508-509.) Here, the trial court denied Citibank's petition to compel arbitration of McGill's injunctive relief claims because the FAA did not preempt the *Broughton-Cruz* rule, which rendered those claims inarbitrable. We review these legal questions de novo.

B.    *Governing FAA Preemption Principles*

The FAA "was designed 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate' [citation], and place such agreements '"upon the same footing as other contracts"' [citations]." (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 474 (*Volt*).) Toward that end, the FAA declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

"'Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' [Citation.] . . . [T]his body of substantive law is enforceable in both state and federal courts . . . [and] 'withdr[a]w[s] the power of the states to require a

6

judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' [Citation.]" (*Perry v. Thomas* (1987) 482 U.S. 483, 489 (*Perry*); see *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. ___, ___ [133 S.Ct. 2304, 2309] (*Italian Colors*) ["consistent with [section 2 of the FAA], courts must 'rigorously enforce' arbitration agreements according to their terms"].)

"The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. [Citation.] But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law — that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citation.]"[1] (*Volt*, *supra*, 489 U.S. at p. 477.) "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' [Citations.]" (*AT&T Mobility*, *supra*, 131 S.Ct. at p. 1748; *Volt*, *supra*, 489 U.S. at p. 478 [FAA's "passage 'was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered'"].)

---

[1] The California Supreme Court recognizes "'four species of federal preemption: express, conflict, obstacle, and field.' [Citation.] 'First, express preemption arises when Congress "define[s] explicitly the extent to which its enactments pre-empt state law. [Citation.] . . . ." [Citations.] Second, conflict preemption will be found when simultaneous compliance with both state and federal directives is impossible. [Citations.] Third, obstacle preemption arises when "'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" [Citations.] Finally, field preemption, i.e., "Congress' intent to pre-empt all state law in a particular area," applies "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." [Citation.]' [Citations.]" (*Parks v. MBNA America Bank, N.A.* (2012) 54 Cal.4th 376, 383.) As stated above, this case presents an obstacle preemption issue.

The FAA's displacement of state laws that interfere with its purpose "is 'now well-established,' [citation], and has been repeatedly reaffirmed [citations]." (*Preston v. Ferrer* (2008) 552 U.S. 346, 353 (*Preston*).)  Indeed, the FAA preempts state statutes that expressly invalidate arbitration agreements (see, e.g., *Perry*, *supra*, 482 U.S. at pp. 484, 490 [FAA preempts California Labor Code provision requiring judicial resolution of certain wage claims despite arbitration agreement]), state statutes that do not expressly invalidate arbitration agreements but have been judicially interpreted to do so (see, e.g., *Southland Corp. v. Keating* (1984) 465 U.S. 1, 10 [FAA preempts state statute interpreted by California Supreme Court to require judicial resolution of claims brought under the California Franchise Investment Law]), and any other "state-law rules that stand as an obstacle to the accomplishment of the FAA's objective[]" of enforcing arbitration agreements according to their specific terms (*AT&T Mobility*, *supra*, 131 S.Ct. at p. 1748).

The purpose underlying a state statute or rule is irrelevant.  According to *AT&T Mobility*, if the state law interferes with the FAA's purpose of enforcing arbitration agreements according to their terms, the state law is preempted no matter how laudable its objective.  (*AT&T Mobility*, *supra*, 131 S.Ct. at p. 1753; *Iskanian*, *supra*, 59 Cal.4th at p. 384 ["a state law rule, however laudable, may not be enforced if it is preempted by the FAA"].)  For example, in *AT&T Mobility*, the Supreme Court held the FAA preempted a state-law rule invalidating class-action waivers in certain consumer adhesion contracts that required consumers to arbitrate their claims on an individual basis.  The California Supreme Court had created the "*Discover Bank* rule" because it found class-action waivers in adhesion contracts allowed companies to effectively exonerate themselves from liability for cheating large numbers of consumers out of money individually too small for a consumer to bring an individual action.  (*AT&T Mobility*, at p. 1746.)

In finding the FAA preempted the *Discover Bank* rule, the United States Supreme Court rejected the argument "class proceedings are necessary to prosecute

8

small-dollar claims that might otherwise slip through the legal system" by declaring "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." (*AT&T Mobility*, *supra*, 131 S.Ct. at p. 1753.) Simply stated, if a state law conflicts with the FAA, the supremacy clause in the United States Constitution (U.S. Const., art. VI, cl. 2) requires the state law to give way. (*Nitro-Lift Technologies, LLC v. Howard* (2012) ___ U.S. ___, ___ [133 S.Ct. 500, 504]; *Italian Colors*, *supra*, 133 S.Ct. at p. 2320 (dissenting opn., of Kagan, J.); *Perry*, *supra*, 482 U.S. at p. 491.)

Based on *AT&T Mobility*, the California Supreme Court has begun revisiting other rules it established in the arbitration context to protect consumers and employees from companies with superior bargaining power. For example, in *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic II*), the court reconsidered its earlier decision in *Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659 (*Sonic I*), where it examined the enforceability of an employer's arbitration agreement that required employees to waive the right to participate in a nonbinding administrative hearing process the California Legislature created to protect employees and assist them in recovering unpaid wages. The *Sonic I* court established a categorical rule declaring it against public policy and unconscionable for an employer to require its employees to waive the right to a so-called "Berman hearing." The court, however, did not invalidate the entire arbitration agreement, but rather held the employer and employee must first engage in the Berman hearing process, and then arbitrate their dispute according to their arbitration agreement if they are not satisfied with the outcome. (*Sonic II*, *supra*, 57 Cal.4th at p. 1124.)

In *Sonic II*, the California Supreme Court overturned *Sonic I*'s categorical prohibition against Berman hearing waivers based on *AT&T Mobility*'s "precept that 'efficient streamlined procedures' is a fundamental attribute of arbitration with which state law may not interfere." (*Sonic II*, *supra*, 57 Cal.4th at p. 1140.) The *Sonic II* court

9

explained, "Because a Berman hearing causes arbitration to be substantially delayed, the unwaivability of such a hearing, even if desirable as a matter of contractual fairness or public policy, interferes with a fundamental attribute of arbitration—namely, its objective "'to achieve 'streamlined proceedings and expeditious results,'"' . . . [and therefore the FAA preempts] *Sonic I*'s rule."[2]  (*Id*. at p. 1141.)

Similarly, in *Iskanian*, the California Supreme Court recently revisited its earlier decision in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*), where the court examined whether a class action waiver that required employees to arbitrate overtime wage disputes on an individual basis was unenforceable as against public policy.  (*Iskanian*, *supra*, 59 Cal.4th at pp. 359-360.)  The *Gentry* court held, "If [the trial court] concludes . . . a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, *it must invalidate the class arbitration waiver* to ensure that these employees can 'vindicate [their] unwaivable rights in an arbitration forum.'  [Citation.]"  (*Gentry*, at p. 463, italics added.)

In *Iskanian*, the California Supreme Court overturned *Gentry* because the FAA preempts *Gentry*'s rule against employment class action waivers.  The *Iskanian* court explained *AT&T Mobility* rendered any state-law rule against class action waivers invalid, even if the waiver has an undesirable exculpatory effect, because requiring the parties to an arbitration agreement to engage in class arbitration or litigation when they

---

[2]     The *Sonic II* court held the arbitration agreement with the Berman hearing waiver still could be unenforceable if the agreement was unreasonably one-sided and unconscionable for reasons that did not single out arbitration.  The court remanded the case to the trial court to determine whether the agreement was unconscionable based on rules equally applicable to all contracts, not just arbitration agreements.  (*Sonic II*, *supra*, 57 Cal.4th at pp. 1124-1125.)

agreed to bilateral arbitration interferes with the fundamental attributes of arbitration as a streamlined, efficient, and less expensive dispute resolution mechanism, and thereby interferes with the FAA's primary purpose of enforcing arbitration agreements according to their terms.  (*Iskanian*, *supra*, 59 Cal.4th at pp. 362-364.)

C.      *McGill's UCL, FAL, and CLRA Injunctive Relief Claims Are Arbitrable*

1.      The *Broughton-Cruz* Rule

The trial court refused to require McGill to arbitrate her injunctive relief claims under the UCL, FAL, and CLRA based on another arbitration rule the California Supreme Court created to protect consumers—the *Broughton-Cruz* rule.  That rule categorically prohibits arbitration of certain injunctive relief claims brought for the public's benefit.

*Broughton* involved an individual plaintiff's CLRA claims seeking damages and injunctive relief based on a health insurer's deceptive business practices.  (*Broughton*, *supra*, 21 Cal.4th at pp. 1072-1073.)  The court held the plaintiff's CLRA claims for damages were subject to the parties' arbitration agreement because settled precedent established "statutory damages claims are fully arbitrable."  (*Id*. at p. 1084.)  "'By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' [Citation.]"  (*Ibid*.)  The *Broughton* court, however, determined the plaintiff's CLRA claims for injunctive relief were not arbitrable because the California Legislature never intended to allow arbitration of these claims.  (*Id*. at pp. 1080-1082.)

The *Broughton* court based its conclusion on an "'inherent conflict'" between arbitration and the underlying purpose of the CLRA's injunctive relief remedy.  (*Broughton*, *supra*, 21 Cal.4th at p. 1082.)  The court found this inherent conflict arose from two factors.  First, injunctive relief under the CLRA was for the benefit of the general public rather than the individual plaintiff who brought the action.  The individual

11

plaintiff already had been deceived by the defendant's deceptive business practices, and therefore an injunction preventing those practices in the future would benefit the general public, not the individual plaintiff. "Second, the judicial forum has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators." (*Ibid*.)

In *Broughton*, the Supreme Court also concluded its interpretation of the CLRA did not contravene the FAA, and therefore the FAA did not preempt *Broughton*'s prohibition against arbitration of injunctive relief claims. (*Broughton*, *supra*, 21 Cal.4th at pp. 1082-1083.) In reaching this conclusion, the court relied on earlier United States Supreme Court cases holding statutory claims are subject to arbitration unless arbitration would prevent the effective vindication of the statutory rights at issue. Those cases explain a statutory claim is not arbitrable when the text of the statute creating the claim, the statute's legislative history, or an inherent conflict between arbitration and the statute's purpose demonstrate Congress did not intend the claim to be arbitrated. (*Id*. at p. 1075.) The *Broughton* court acknowledged this exception to the general rule of arbitrability only had been applied to federal statutory rights—not state statutory rights— but nonetheless applied it to the CLRA's injunctive relief provision because "it would be perverse to extend the [federal] policy [of enforcing arbitration agreements] so far as to preclude states from passing legislation the purposes of which make it incompatible with arbitration, or to compel states to permit the vitiation through arbitration of the substantive rights afforded by such legislation." (*Id*. at p. 1083.)

In *Cruz*, the California Supreme Court extended *Broughton* to injunctive relief claims under the UCL and FAL. (*Cruz*, *supra*, 30 Cal.4th at p. 307.) As with CLRA injunctive relief claims, the court concluded UCL and FAL injunctive relief claims are not arbitrable because they are brought for the public's benefit and the

12

California Legislature never intended for these claims to be arbitrated.  (*Id*. at pp. 315-316.)

  2. The FAA Preempts the *Broughton-Cruz* Rule

   Following *AT&T Mobility*, several federal district courts concluded the FAA preempted the *Broughton-Cruz* rule based on *AT&T Mobility*'s holding that displaced any state-law rule that interfered with arbitration, but at least two courts concluded the rule was not preempted based on the public benefit rationale the California Supreme Court employed in establishing the *Broughton-Cruz* rule.  (Compare *Meyer v. T-Mobile USA, Inc.* (N.D.Cal. 2011) 836 F.Supp.2d 994, 1005-1006 [FAA preempts *Broughton-Cruz* rule] and *Kaltwasser v. AT&T Mobility LLC* (N.D.Cal. 2011) 812 F.Supp.2d 1042, 1050-1051 [same] with *Ferguson v. Corinthian Colleges* (C.D.Cal. 2011) 823 F.Supp.2d 1025, 1032-1036 [FAA does not preempt *Broughton-Cruz* rule] and *In re DirecTV Early Cancellation Fee Marketing and Sales Practices Litigation* (C.D.Cal. 2011) 810 F.Supp.2d 1060, 1071-1073 [same].)  The Ninth Circuit Court of Appeals resolved this conflict by declaring the *Broughton-Cruz* rule preempted and overturning the two lower court decisions reaching the opposition conclusion.  (*Ferguson v. Corinthian Colleges, Inc.* (9th Cir. 2013) 733 F.3d 928, 934-937 (*Ferguson*); *Lombardi v. DirecTV, Inc.* (9th Cir. 2013) 546 Fed.Appx. 715, 716.)

   Only one reported California case has addressed whether the FAA preempts the *Broughton-Cruz* rule.  In *Nelson v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, the Court of Appeal concluded the FAA preempts the rule based on the same rationale relied on by the federal courts.  (*Id*. at p. 1136.)  That conclusion, however, was arguably dicta and the *Nelson* court relied on a Ninth Circuit decision that

13

was vacated later based on a rehearing en banc. (See *Kilgore v. KeyBank, N.A.* (9th Cir. 2012) 697 F.3d 1191, 1192.)[3]

We conclude the Supreme Court's directive in *AT&T Mobility* requires us to find the FAA preempts the *Broughton-Cruz* rule. In *AT&T Mobility*, the Supreme Court dramatically broadened the FAA's preemptive scope. This in turn requires a reevaluation of all state statutes and rules that allowed courts to deny enforcement of arbitration agreements. (See *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 769 (*Phillips*).) As the Supreme Court explained, "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." (*AT&T Mobility*, *supra*, 131 S.Ct. at p. 1747.) "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." (*Id*. at p. 1753.)

The *Broughton-Cruz* rule is a state law that categorically prohibits arbitration of all injunctive relief claims under the UCL, FAL, and CLRA that are brought for the public's benefit. The FAA therefore preempts the rule. Whatever views we may hold regarding the relative wisdom of the *Broughton-Cruz* rule and *AT&T Mobility*, "we are all bound to follow the law as it has been interpreted by our highest court." (*Phillips*, *supra*, 209 Cal.App.4th at p. 769.) Indeed, in *Sonic II* and *Iskanian*, the California Supreme Court acknowledged state-law rules it announced to protect consumers and employees from arbitration agreements that may have an exculpatory effect cannot survive in the face of the FAA's broad preemptive scope announced in *AT&T Mobility*. (*Iskanian*, *supra*, 59 Cal.4th at p. 364; *Sonic II*, *supra*, 57 Cal.4th at p. 1141.)

---

3 *Nelson* relied on *Kilgore v. KeyBank, N.A.* (9th Cir. 2012) 673 F.3d 947. On rehearing in that case, the Ninth Circuit concluded the *Broughton-Cruz* rule did not apply because the claims at issue did not seek public injunctive relief. (*Kilgore v. KeyBank, N.A.* (9th Cir. 2013) 718 F.3d 1052, 1060-1061.)

Moreover, the rationale the *Broughton* court adopted to support its conclusion the FAA did not preempt its rule declaring public injunctive relief claims inarbitrable no longer withstands scrutiny. As explained above, *Broughton* concluded the FAA did not preempt its rule based on earlier United States Supreme Court precedent holding statutory claims are not subject to arbitration if it would prevent the effective vindication of the underlying statutory right. (*Broughton*, *supra*, 21 Cal.4th at pp. 1082-1083.) Subsequent cases, however, refute *Broughton*'s conclusion the effective vindication exception applies to state statutory claims. For example, in concluding the FAA preempted the *Broughton-Cruz* rule, the *Ferguson* court explained the effective vindication exception is "reserved for claims brought under federal statutes." (*Ferguson*, *supra*, 733 F.3d at p. 936; see *Italian Colors*, *supra*, 133 S.Ct. at p. 2320 (dissenting opn. of Kagan, J.) ["We have no earthly interest (quite the contrary) in vindicating [a state] law. Our effective-vindication rule comes into play only when the FAA is alleged to conflict with another *federal* law" (original italics)].)

The rationale for the effective vindication exception confirms the exception only applies to federal statutory claims, and therefore may not justify the state-law *Broughton-Cruz* rule. The effective vindication exception arises from the principle Congress may exclude a federal statutory claim from the FAA's coverage because it enacted the statutes establishing both the FAA and the federal statutory claim. Under this exception to the FAA's broad scope, a federal statutory claim is not arbitrable when the text of the statute creating the claim, its legislative history, or its operation reveals a *congressional* intent to exclude the statutory claim from arbitration. (See, e.g., *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 26 ["Although all statutory claims may not be appropriate for arbitration, 'having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue'"]; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 628 ["We must assume that if Congress

15

intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history"].)

Based on the United States Constitution's supremacy clause only Congress may exclude a statute from the FAA's coverage; a state legislature lacks authority to do so. (U.S. Const., art. VI, cl. 2 ["the Laws of the United States . . . shall be the supreme Law of the Land"]; see, e.g., *Volt*, *supra*, 489 U.S. at p. 477 ["to the extent [a state law] 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[, it is preempted]'"].) Accordingly, the California Legislature's intent in enacting the UCL, FAL, and CLRA is irrelevant in determining whether the FAA preempts a state-law rule prohibiting arbitration of injunctive relief claims under those statutes.

McGill nonetheless contends the United States Supreme Court applied the effective vindication exception to state statutory rights in *Preston*. She is mistaken. In *Preston*, the Supreme Court enforced the parties' arbitration agreement and held the FAA preempted a state statute that otherwise required the parties to submit their dispute to the state labor commissioner for resolution. (*Preston*, *supra*, 552 U.S. at pp. 349-350, 358-359.) The *Preston* court noted the parties' arbitration agreement merely changed the forum in which their dispute would be resolved—an arbitral forum rather than an administrative one—but did not affect the parties' substantive state law rights. (*Id.* at p. 359.) Contrary to McGill's contention, the simple acknowledgment the parties did not relinquish any substantive state law rights is not an application of the effective vindication exception.

McGill also cites two circuit court decisions that applied the effective vindication exception to sever portions of arbitration agreements that required the parties to forego certain state statutory rights. (See *Kristian v. Comcast Corp.* (1st Cir. 2006) 446 F.3d 25, 29, 64; *Booker v. Robert Half Intern., Inc.* (D.C. Cir. 2005) 413 F.3d 77,

16

79.)  Both of these cases, however, applied the exception to state statutory rights without considering whether the exception's underlying rationale supported its application to state statutory rights.  "An opinion is not authority for a point not raised, considered, or resolved therein" (*Styne v. Stevens* (2001) 26 Cal.4th 42, 57; *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2014) 229 Cal.App.4th 549, 564), and "we are not bound by decisions of lower federal courts on issues of federal law" (*California Assn. for Health Services at Home v. State Dept. of Health Care Services* (2012) 204 Cal.App.4th 676, 684; see *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 58).  As explained above, we conclude the United States Constitution's supremacy clause prevents courts from applying the effective vindication exception to state statutory rights, and therefore we decline to follow these circuit court decisions.

3.     *Iskanian* Does Not Reaffirm the *Broughton-Cruz* Rule or Otherwise Save It From FAA Preemption

McGill contends the California Supreme Court's *Iskanian* decision reaffirmed *Broughton*'s conclusion the FAA does not preempt the *Broughton-Cruz* rule and its prohibition against arbitrating UCL, FAL, and CLRA injunctive relief claims. McGill misreads *Iskanian*.

In *Iskanian*, the California Supreme Court examined whether the FAA preempts state-law rules restricting the enforceability of arbitration agreements that include a waiver of an employee's right to bring class or representative actions based on an employer's failure to pay wages and provide meal and rest periods.  (*Iskanian*, *supra*, 59 Cal.4th at pp. 359-360.)  As explained above, *Iskanian* overturned *Gentry*'s state-law rule invalidating class action waivers that required employees to pursue their Labor Code claims on an individual basis only.  Even if an individual proceeding is an ineffective means to prosecute wage and hour claims, the *Iskanian* court concluded the FAA preempts *Gentry*'s rule because it interferes with the FAA's objective of enforcing arbitration agreements according to their terms.  (*Iskanian*, at pp. 363-364.)

17

The *Iskanian* court, however, distinguished an employee's class action to recover unpaid wages from an employee's representative action to recover civil penalties under the PAGA.  In the former, an employee seeks to recover wages an employer failed to pay the employee and all other similarly situated employees, plus all statutory penalties the Labor Code awards to employees for their employer's failure to pay all wages and provide all required breaks.  (See, e.g., Lab. Code, § 1194, subd. (a) ["any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit"]; see also *id*. at § 203, subd. (a) ["If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days"].)

In a representative action under the PAGA, however, an aggrieved employee may bring a civil action personally and on behalf of other current or former employees to recover civil penalties from the employer that only the state's labor law enforcement agencies previously could recover.  (*Iskanian*, *supra*, 59 Cal.4th at pp. 380-381; Lab. Code, § 2699, subd. (a) ["any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency . . . for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees"].)

As the *Iskanian* court explained, before the PAGA's enactment in 2004, several statutes imposed civil penalties on employers for certain Labor Code violations and also made some violations criminal misdemeanors.  The Labor Commissioner could bring an action to recover the civil penalties, with all funds collected going to the state's

18

general fund or the Labor and Workforce Development Agency, and local district attorneys could prosecute criminal violations. (*Iskanian*, *supra*, 59 Cal.4th at p. 378.) These enforcement mechanisms proved ineffective, however. State labor enforcement agencies lacked the necessary resources to investigate employers who may have violated the Labor Code, and district attorneys rarely investigated and prosecuted misdemeanor Labor Code violations because they used their limited resources to focus on more serious offenses. The California Legislature therefore enacted the PAGA "'to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, *with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts*.'" (*Iskanian*, at p. 379, italics added.)

Before an aggrieved employee may file a representative PAGA action, he or she must give written notice of the alleged Labor Code violations to both the employer and the Labor and Workforce Development Agency. The employee may not file the action unless the agency declines to investigate, declines to issue a citation after investigating, or fails to initiate and complete its investigation within the time periods the Labor Code specifies. (Lab. Code, § 2699.3; *Iskanian*, *supra*, 59 Cal.4th at p. 380.) The employee brings the action as a "'proxy or agent of the state's labor enforcement agencies,'" and those agencies are "always the real part[ies] in interest in the suit." (*Iskanian*, at pp. 380, 382.) "'In a lawsuit brought under the [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor and Workforce Development Agency.'" (*Id*. at p. 380.)

"'Because an aggrieved employee's action under the [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government.'" (*Iskanian*, *supra*, 59 Cal.4th at p. 381.) "The civil penalties recovered on behalf of the state under the PAGA are distinct from the

statutory damages to which employees may be entitled in their individual capacities."[4] (*Ibid.*)  Seventy-five percent of the civil penalties recovered in a representative PAGA action go to the Labor and Workforce Development Agency, with the remainder paid to the aggrieved employees as an incentive to bring the action.  (*Id.* at p. 380.)

The *Iskanian* court held these characteristics make an employee's waiver of the right to bring a representative PAGA action unenforceable as against public policy because a predispute waiver of that right would allow an employer to exculpate itself for its own wrongdoing in violation of Civil Code section 1668, and also would allow a private agreement to contravene a law established for a public purpose in violation of Civil Code section 3513.[5]  (*Iskanian*, *supra*, 59 Cal.4th at pp. 382-383.)  Unlike *Gentry*'s

[4]    "Case law has clarified the distinction 'between a request for statutory penalties provided by the Labor Code for employer wage-and-hour violations, which were recoverable directly by employees well before the [PAGA] became part of the Labor Code, and a demand for "civil penalties," previously enforceable only by the state's labor law enforcement agencies.  An example of the former is [Labor Code] section 203, which obligates an employer that willfully fails to pay wages due an employee who is discharged or quits to pay the employee, in addition to the unpaid wages, a penalty equal to the employee's daily wages for each day, not exceeding 30 days, that the wages are unpaid. [Citation.]  Examples of the latter are [Labor Code] section 225.5, which provides, in addition to any other penalty that may be assessed, an employer that unlawfully withholds wages in violation of certain specified provisions of the Labor Code is subject to a civil penalty in an enforcement action initiated by the Labor Commissioner in the sum of $100 per employee for the initial violation and $200 per employee for subsequent or willful violations, and [Labor Code] section 256, which authorizes the Labor Commissioner to "impose a civil penalty in an amount not exceeding 30 days [*sic*] pay as waiting time under the terms of [Labor Code] Section 203.'" [Citations.]"  (*Iskanian*, *supra*, 59 Cal.4th at p. 381.)

[5]    Civil Code section 1668 provides, "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

Civil Code section 3513 provides, "Any one may waive the advantage of a law intended solely for his benefit.  But a law established for a public reason cannot be contravened by a private agreement."

rule against waiver of an employee's right to bring a class action for unpaid wages, the *Iskanian* court held the FAA did not preempt its rule against waiver of an employee's right to bring a representative PAGA action to recover civil penalties because the latter rule "does not frustrate the FAA's objectives." (*Iskanian*, at p. 384.)

Based on its review of the FAA's legislative history and the United States Supreme Court precedent interpreting the FAA, the *Iskanian* court concluded the FAA "aims to ensure an efficient forum for the resolution of *private* disputes" by requiring the parties to an arbitration agreement to arbitrate their disputes in the manner to which they agreed. (*Iskanian*, *supra*, 59 Cal.4th at p. 384, original italics.) "There is no indication[, however,] that the FAA was intended to govern disputes between the government in its law enforcement capacity and private individuals." (*Iskanian*, at p. 385.)

"Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [Labor and Workforce Development] Agency or aggrieved employees—that the employer has violated the Labor Code. . . . [¶] . . . Nothing in the text or legislative history of the FAA nor in the Supreme Court's construction of the statute suggests that the FAA was intended to limit the ability of states to enhance their public enforcement capabilities by enlisting willing employees in qui tam actions. Representative actions under the PAGA, unlike class action suits for damages, do not displace the bilateral arbitration of private disputes between employers and employees over their respective rights and obligations toward each other. Instead, they directly enforce *the state's* interest in penalizing and deterring employers who violate California's labor laws." (*Iskanian*, *supra*, 59 Cal.4th at pp. 386-387, original italics.)

Contrary to McGill's contention, *Iskanian* did not "reaffirm" *Broughton-Cruz*'s prohibition against arbitrating public injunctive relief claims or the rationale the *Broughton* court adopted to support its conclusion the FAA did not preempt

21

that rule. Indeed, *Iskanian* does not even mention *Broughton* or *Cruz*. As explained above, *Broughton* found the right to seek public injunctive relief could not be vindicated effectively through arbitration and the California Legislature never intended to allow arbitration of these claims. Not only is *Broughton*'s rationale no longer viable for the reasons discussed above, *Iskanian* relies on a different rationale to support its conclusion the FAA does not preempt its rule prohibiting PAGA representative action waivers. *Iskanian* concludes a PAGA action poses no obstacle to FAA purposes because the FAA only applies to private agreements between parties to arbitrate their disputes. A PAGA representative action is not subject to a private arbitration agreement between an employer and employee because the action is a dispute between the state and an employer to recover civil penalties for Labor Code violations. An aggrieved employee simply brings the action as a "'proxy or agent of the state's labor law enforcement agencies'"; the state at all times remains the real party in interest and the lion's share of the recovery goes to the state. (*Iskanian*, *supra*, 59 Cal.4th at pp. 380, 382, 387-388.)

Moreover, the *Iskanian* court emphasized, "Our FAA holding applies specifically to a state law rule barring predispute waiver of an employee's right to bring an action that can only be brought by the state or its representatives, where any resulting judgment is binding on the state and any monetary penalties largely go to state coffers." (*Iskanian*, *supra*, 59 Cal.4th at p. 388.) The PAGA is unique in comparison to the UCL, FAL, and CLRA because the state retains "primacy over private enforcement efforts." (*Iskanian*, at p. 379.) An employee may not file a PAGA action unless and until he or she gives the state notice of the specific Labor Code violations on which the action will be based, and the state declines to investigate, declines to issue a citation after investigating, or fails to take action within certain statutory time periods.

A plaintiff seeking injunctive relief under the UCL, FAL, or CLRA, however, is not required to give advance notice to the state and await state action (or inaction) before filing a lawsuit. McGill cites no authority, and we have found none, that

22

designates the state as the real party in interest on an injunctive relief claim under the UCL, FAL, or CLRA.  Similarly, McGill cites no authority that binds the state to any judgment on a citizen's injunctive relief claims under the UCL, FAL, or CLRA.  Although a plaintiff in both a PAGA representative action and an action seeking injunctive relief under the UCL, FAL, and CLRA generally acts as a private attorney general, the PAGA representative action is fundamentally different than the injunctive relief action under the other statutes.  Accordingly, nothing in *Iskanian*'s analysis of PAGA representative action waivers prevents the conclusion the FAA preempts the *Broughton-Cruz* rule.

## III

### DISPOSITION

The order is reversed and the matter remanded for the trial court to order all claims to arbitration.  Citibank shall recover its costs on appeal.

ARONSON, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

THOMPSON, J.